UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
MIGUELINA DURAN,                )
                                )
                Plaintiff,      )
                                )
        v.                      )        CIVIL ACTION
                                )        No. 24-10263-WGY
MARTIN J. O'MALLEY, COMMISSIONER )
OF SOCIAL SECURITY,             )
                                )
                Defendant.      )
_____)
```

YOUNG, D.J.                                    October 17, 2024

**MEMORANDUM OF DECISION**

## I.    INTRODUCTION

Plaintiff Miguelina Duran ("Duran") brings this suit against Martin J. O'Malley, the Commissioner of Social Security ("Commissioner").  Duran challenges the determination of the Appeals Council ("Council"), which denied her request for review after Administrative Law Judge John Benson ("the Hearing Officer") determined that Duran was not disabled and thus not entitled to disability benefits.  See Pl.'s Compl. ("Compl.") ¶ 1, ECF No. 1; see also Mem. Supp. Mot. Reverse Comm'r 3, ECF No. 13 ("Mot. Reverse").  The Commissioner opposes and moves to affirm the Commissioner's decision, arguing that as Duran did not provide "good cause" for failing to submit rebuttal evidence to the hearing officer, she has waived the right to have it reviewed by the Council.  See Mem. Supp. Mot. Affirm Comm'r 1,

ECF No. 23 ("Mot. Affirm").  This Court **GRANTS** Duran's motion to reverse the Commissioner's decision, ECF No. 12, as the Council did not rely on a lack of "good cause" to deny review of Duran's appeal, and the Council's decision not to review based upon the rebuttal evidence was "egregiously" wrong under the circumstances.  See Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001).  The Commissioner's decision is therefore reversed and the matter remanded for further proceedings.  This Court therefore **DENIES** the Commissioner's motion to affirm, ECF No. 22.

## II.  PROCEDURAL HISTORY

On July 9, 2021, Duran filed a Title II application for a period of disability and disability insurance benefits.  SSA Administrative Record of Social Security Proceedings ("R.") 22, ECF No. 11.  She also filed a Title XVI application for supplemental security income.  Id.  The Social Security Administration ("the Administration") initially denied Duran's claims on December 2, 2021, and denied them again upon reconsideration on July 26, 2022.  Id.  Thereafter, Duran requested a hearing on October 1, 2022.  Id.  A hearing (held telephonically due to COVID-19) occurred on February 3, 2023, before the Hearing Officer, during which Duran testified, with the assistance of an attorney and a Spanish interpreter.  Id.  The Hearing Officer also heard testimony from Tanya Edghill

("Edghill"), a vocational expert.  Id.  After the hearing, the Hearing Officer denied Duran's claims on April 17, 2023.  Id. at 33.

On May 18, 2023, Duran appealed the Hearing Officer's decision to the Council.  Id. at 347-48.  Duran attached to that appeal the vocational report of Karen Starr (the "Starr Report"), which rebutted the testimony Edghill had given at the February hearing.  Id. at 345-46.  On December 6, 2023, the Appeals Council denied Duran's request for review.  Id. at 1.

Duran then filed her complaint in federal court on January 31, 2024.  See generally Compl.  On April 30, 2024, Duran filed her motion to reverse or remand the Commissioner's decision, ECF No. 12, as well as a supporting memorandum.  See Mot. Reverse. On June 14, 2024, the Commissioner filed his motion to affirm his decision, ECF No. 22, as well as a supporting memorandum. See Mot. Affirm.  Duran replied to the Commissioner's motion to affirm on June 27, 2024.  See Reply Mot. Affirm, ECF No. 25 ("Reply").

On July 25, 2024, the Court heard the parties on their respective motions, and took the matter under advisement.  See Elec. Clerk's Notes, ECF No. 27.

This Court has jurisdiction under 42 U.S.C. § 405(g).

### III. FACTS

Duran is a resident of Lawrence, Massachusetts.  Compl. ¶ 1.  Duran was born in 1981 and therefore qualifies as a "younger individual" under the relevant social security statutes.  Mot. Reverse 1; see 20 C.F.R. §§ 404.1563, 416.963.  She alleges that she has been unable to work since August 17, 2020, due to the following conditions: "Herniated Discs Lumbar, Tendon Inflammation, Lumbar Radiculopathy, Anemia, Right Foot Arthritis, Bladder Issues, Depression, Memory Loss, Sleep Disorder, [and] Neck Pain."  R. 60.  Prior to August 2020, Duran worked as a personal care aide and cleaner.  Id. at 31.

At the hearing, Edghill testified that an individual with the same age, education, work experience, and Residual Functional Capacity ("RFC") as Duran would not be able to perform her past work.[1]  Id. at 55.  Edghill testified, however, that there were jobs available in the national economy that Duran could perform.  Id.  Specifically, Edghill observed that with Duran's limitations, three sedentary jobs existed: assembler (DOT 713.687-018, SVP 2,[2] 10,000 jobs nationally),

_____

[1] The RFC reflects the claimant's ability to do physical and mental work-related tasks on a sustained basis.  20 C.F.R. § 404.1545(a)(1).  Essentially, one's RFC is a reflection of one's mental and physical limitations.

[2] An SVP is the "Specific Vocational Preparation" required for an occupation.  SVP is defined as:

table worker (DOT 739.687-182, SVP 2, 35,000 jobs nationally),
and eyeglass polisher (DOT 713.684-038, SVP 2, 15,000 jobs
nationally).  Id. at 56.

All three jobs raised by Edghill were found in the
Dictionary of Occupational Titles ("DOT"), a compilation of
occupations found in the national economy prepared by the
Employment and Training Administration (an office of the
Department of Labor) and "last updated in 1991."  See Off. of
Admin. L. Judges, Dictionary of Occupational Titles - Fourth
Edition, Revised 1991,
https://www.dol.gov/agencies/oalj/topics/libraries/LIBDOT/ (last
visited August 14, 2024) ("Dictionary of Occupational Titles").
While the DOT was last updated in 1991, the three occupations
noted by Edghill as possible occupations for Duran were last

--------

the amount of lapsed time required by a typical worker
to learn the techniques, acquire the information, and
develop the facility needed for average performance in
a specific job-worker situation.  This training may be
acquired in a school, work, military, institutional,
or vocational environment.  It does not include the
orientation time required of a fully qualified worker
to become accustomed to the special conditions of any
new job.  Specific vocational training includes:
vocational education, apprenticeship training, in-
plant training, on-the-job training, and essential
experience in other jobs.

U.S. Dep't of Labor, Dictionary of Occupational Titles (1991),
https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTPARTS
/.  An SVP of 2 means that that occupation requires "anything
beyond short demonstration up to and including one month" of
specific vocational preparation.  Id.

updated within the compilation in 1977.  See 2 Dictionary of
Occupational Titles 709, 774.  The Social Security
Administration is the only governmental agency that continues to
rely on the DOT and has been developing a new Occupational
Information System to replace it since 2012.  See Soc. Sec.
Admin., Occupational Information System (OIS) Project,
https://www.ssa.gov/disabilityresearch/occupational_info_systems
.html (last visited on August 14, 2024).

### A. The Hearing Officer's Decision
#### 1. Legal Standard

To obtain Social Security Disability Insurance benefits, an
applicant must show that she is disabled.  42 U.S.C. §
423(a)(1)(E).  Disability is defined as the inability "to engage
in any substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to
last for a continuous period of not less than 12 months[.]"  42
U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner
applies a five-step sequential evaluation to determine if a
claimant is disabled.  See 20 C.F.R. § 416.920; see also
Goodermote v. Secretary of Health & Human Servs., 690 F.2d 5, 6-
7 (1st Cir. 1982).  The claimant bears the burdens of production
and persuasion at steps one through four of this analysis.
Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001);

Clarification of Rules Involving Residual Functional Capacity
Assessments, 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003).

First step.  The first step of the sequential evaluation
process is determining whether the claimant is engaging in
substantial gainful activity.  Substantial gainful activity is
defined as earnings from a work-setting exceeding an amount that
the Administration determines each year.  20 C.F.R. §§
404.1520(a)(4)(i), 404.1574(b).

Second step.  At the second step, the hearing officer
determines whether impairments are "severe."  20 C.F.R. §
404.1520(a)(4)(ii).  An impairment or combination of impairments
is severe if it significantly limits an individual's ability to
engage in basic work activities.  20 C.F.R. § 404.1520(c).

Third step.  At step three, the hearing officer assesses
whether the claimant's impairment or combination of impairments
is of a severity to meet or medically equal the criteria of an
impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.
20 C.F.R. §§ 416.920(d), 416.925, 416.926.  If the claimant's
impairment is of such severity, the claimant is disabled.  20
C.F.R. § 404.1525.  If it is not, the analysis proceeds to the
next step.

Fourth step.  If a claim does not meet the severity of a
listing at step three, the inquiry does not end.  20 C.F.R. §
404.1520(e).  Instead, the hearing officer proceeds to step four

and assesses the RFC of the claimant.  Id.  RFC determinations

must consider all the claimant's impairments (including severe

and non-severe impairments).  20 C.F.R. § 404.1545(a)(2).  The

hearing officer then uses the RFC determination to decide

whether the claimant can return to past relevant work.  20

C.F.R. § 404.1520(e).

Fifth step.  If the claimant's RFC would not allow her to

return to past relevant work, the hearing officer continues to

step five of the sequential evaluation process.  20 C.F.R. §

404.1520(a)(4)(v).  At step five, the burden of proof shifts to

the Administration to establish that a person of the same age,

education, work experience, and RFC could do work that exists in

significant numbers in the national economy.  20 C.F.R. §§

404.1560(c)(2), 404.1512(b)(3).  If the hearing officer finds

that the claimant can do work that exists in significant numbers

in the national economy given her RFC, age, education, and work

experience, then the hearing officer will find the claimant not

disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1566(b).

### 2. Summary of Findings

To obtain Disability Insurance Benefits and Supplemental

Social Security Income Benefits, Duran must establish disability

beginning on or before her date last insured -- here, December

31, 2025.  R. 22-23.  The hearing officer concluded that Duran

had not been living under a disability within the meaning of the

Social Security Act at any point from the time she alleged she was disabled, August 17, 2020, up to the date of the decision. Id. at 23.

At step one, the hearing officer found that Duran had not engaged in substantial gainful activity since her alleged onset date of August 17, 2020.  Id. at 24.

At step two, the hearing officer found that Duran had "severe" impairments of degenerative disc disease of the cervical and lumbar spine, rotator cuff syndrome of the right shoulder, peripheral neuropathy, depression, and anxiety, which significantly limit her ability to perform basic work activities.  Id.

At step three, the hearing officer found that Duran did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1.  Id. at 25.

At step four, the hearing officer found that Duran had the RFC to perform sedentary work, except that she was also required the option to change positions at 30-minute intervals, "allowing her to remain in the new position for up to two minutes before returning to the previous position."  Id. at 27.  The hearing officer also found that Duran could "occasionally climb stairs, balance, stoop, kneel, crouch, or crawl[,]" as well as "frequently push and pull with the bilateral upper extremities."

Id.  The hearing officer also found, however, that Duran "may
not climb ladders[,]" "must avoid overhead reaching with the
bilateral upper extremities[,]" and "may have no exposure to
workplace hazards such as unprotected heights and dangerous
moving machinery." Id. at 27-28.  Finally, the hearing officer
determined that Duran was "limited to performing simple tasks
that are not done at a production rate pace, such as assembly
line work[.]"  Id. at 28.

At step five, the hearing officer found that there were
jobs that exist in significant numbers in the national economy
that Duran could perform, such as assembler, eyeglass polisher,
and table worker.  Id. at 32.  In making this determination, the
hearing officer relied on the vocational expert's hearing
testimony, which he determined was consistent with the
information in the DOT.  Id. at 32-33.

**B. Duran's Appeal**

On May 18, 2023, Duran filed an appeal of the hearing
officer's decision with the Council.[3]  Id. at 347.  Duran raised

---

[3]  Claimants dissatisfied with hearing officer's decision
may request that the Council review the action.  20 C.F.R. §
416.1467.  The Council may deny or dismiss the request for
review, or it may grant the request and either issue a decision
or remand the case to a hearing officer.  Id.  The Council will
review a decision if:
    (1) [t]here appears to be an abuse of discretion
    by the administrative law judge; (2) [t]here is
    an error of law; (3) [t]he action, findings or
    conclusions of the administrative law judge are

four points in her appeal: first, she argued that the hearing officer erred by failing to provide findings that permit meaningful judicial review of his findings; second, she argued that the hearing officer failed properly to analyze Duran's symptoms, including her pain, pursuant to the Commission's delineated two-step process; third, she argued that the hearing officer erred by failing to consider Duran's past work history as a factor supporting the credibility of her complaints; and fourth, she argued that the hearing officer erred by relying on Edghill's testimony without properly considering whether the

---

> not supported by substantial evidence; (4)
> [t]here is a broad policy or procedural issue
> that may affect the general public interest; or
> (5) [s]ubject to paragraph (b) of this section,
> the Appeals Council receives additional evidence
> that is new, material, and relates to the period
> on or before the date of the hearing decision,
> and if there is a reasonable probability that the
> additional evidence would change the outcome of
> the decision.

20 C.F.R. §§ 416.1470(a), 404.970(a).

    When reviewing decisions, the Council will only consider additional evidence under subsection 20 C.F.R. § 416.1470(a)(5) if the claimant shows good cause including, for example, because "[the claimant] had a physical, mental, educational, or linguistic limitation(s) that prevented [her] from informing [the SSA] about or submitting the evidence earlier."  20 C.F.R. §§ 416.1470(b), 404.970(b).

    If the Council denies a claimant's request for review of a hearing officer's decision, the decision becomes the final decision of the Commissioner and is subject to review by a district court.  Cano v. Saul, No. 1:19-CV-11563-ADB, 2020 WL 1877876, at *1-2 (D. Mass. Apr. 15, 2020) (Burroughs, J.); see also Conte v. McMahon, 472 F. Supp. 2d 39, 44 (D. Mass. 2007).

jobs she identified actually exist in significant numbers in the national economy.  Id. at 347-48.

### 1. The Rebuttal Evidence

With regard to the fourth point Duran raised, Duran also attached a vocational report prepared by Karen R. Starr, MS, CRC, EDPNA ("Starr"), as well as her curriculum vitae, in order to rebut the vocational testimony of Edghill.  Id. at 345-46, 341-42.  In the Starr Report, Starr explains that the "job numbers stated" by Edghill for assembler, eyeglass polisher, and table worker "are overstated, particularly since two of the jobs are borderline obsolete in the current US economy."  Id. at 345. In making the report, Starr relied on her experience as a vocational expert, as well as data collected by the United States Department of Labor and Bureau of Labor Statistics, information in the DOT, and the searchable Job Browser Pro SkillTRAN, a software product that reviews occupation data from all available sources, including the DOT, census data, and data from the Department of Labor.[4]  Id.; see SkillTRAN, Job Browser

---

[4] The Starr Report describes Job Browser Pro as "a software program used by virtually all Social Security vocational experts who testify in Social Security disability hearings."  Id.  The Commissioner does not dispute this characterization. "SkillTRAN's software has been recognized by at least one district court to be widely relied upon by vocational experts in estimating the number of relevant jobs in the national economy." Purdy v. Berryhill, 887 F.3d 7, 14 (1st Cir. 2018) (citing Wood v. Berryhill, No. 17 Civ. 5430, 2017 WL 6419313, at *3 (W.D.

Pro PC, https://skilltran.com/index.php/products/pc-based-solutions/job-browser-pro/ (last visited August 14, 2024).

The Starr Report alleges that for the occupations of assembler and eyeglass polisher, which are both careers in the eyeglass manufacturing industry, "jobs exist, if at all, only in very minimal numbers." R. 345 (emphasis in original). The Starr Report goes on to explain that aside from "boutique companies that make high-priced (truly) designer eyeglasses," "approximately 95% of eyeglass frames are made outside of America with more than 90% produced in China." Id. (citation omitted). The Starr Report states that when both occupations are searched in Job Browser Pro, the number of jobs available is listed as "N/A," "the response given when the number of jobs, if any, is statistically insignificant." Id. at 346.

Regarding the other job mentioned by Edghill, table worker, the Starr Report notes that Job Browser Pro yields 2,875 such jobs (much lower than the 35,000 jobs nationally that Edghill testified to). Id. The Starr Report goes on to explain that the job of table worker has changed dramatically since it was last updated in the DOT, and now may require much more skill and labor than listed in the 1977-era DOT entry. Id. For instance,

Wash. Nov. 17, 2017) (describing Job Browser Pro as "the commonly accepted software used by . . . vocational experts")).

the job title is now rated by the Department of Labor as an SVP of 4 to 6, not 2, as described by Edghill.  Id.

Based on this data, the Starr Report concludes that "there is only evidence, at best, of a trace number of any of the above jobs, no less larger numbers identified by [Edghill]."  Id. (emphasis in original).

### 2. The Council's Denial of Review

On December 6, 2023, the Council sent to Duran a "Notice of Appeals Council Action" regarding her appeal and submission of reasons she disagreed with the hearing officer's decision.  Id. at 1.  The notice stated that the Council "considered the reasons and exhibited them on the enclosed Order," and that the Council "found that the reasons do not provide a basis for changing the [hearing officer's] decision."  Id.  This suit followed.

## IV.  ANALYSIS

### A.   Standard of Review

Courts review the factual findings of a hearing officer based on the substantial evidence standard.  Ortiz v. Secretary of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (citing 42 U.S.C. § 405(g)).[5]  The Court may remand a case to the

---

[5] As this appeal concerns the actions of the Appeals Council, whose standard of review is even narrower than that of the hearing officer, the Court omits a more thorough

Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); to do so, "the Court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim." William S. v. O'Malley, No. CV 24-00143-LDA, 2024 WL 4123488, at *2 (D.R.I. Sept. 9, 2024) (citing Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001)). After a sentence four remand, the Court enters a final and appealable judgment immediately, and thus loses jurisdiction.

---

interrogation of the "substantial evidence standard" above, and instead, explains the standard here.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court need not agree with the hearing officer's weighing of the evidence in order to affirm it. See Purdy, 887 F.3d at 13 (1st Cir. 2018) ("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the hearing officer] not for . . . the courts.") (quoting Rodriguez v. Secretary of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). Substantial evidence need only be enough that a person of "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Id.

The determination of substantiality is based upon an evaluation of the record as a whole. See Frustaglia v. Secretary of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). If the hearing officer's decision was "derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts[,]" it is not supported by substantial evidence. Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020).

Freeman, 274 F.3d at 610 (1st Cir. 2001).  A remand required due
to new evidence submitted to the Council is under sentence four.
Catherine I. v. Saul, No. CV 19-394WES, 2020 WL 2730907, at *6
(D.R.I. May 26, 2020) (citing Orben v. Barnhart, 208 F. Supp. 2d
107, 115 (D.N.H. 2002)).

The Appeals Council must review a case if it receives
"additional evidence that is new, material, and relates to the
period on or before the date of the hearing decision, and there
is a reasonable probability that the additional evidence would
change the outcome of the decision."  20 C.F.R. § 404.970(a)(5).
In the First Circuit, a plaintiff's challenge of the Council's
denial of review "faces the high bar set by Mills v. Apfel [],
which holds that the [Council's] decisions should be afforded 'a
great deal of latitude' and 'great deference.'"  Catherine I.,
2020 WL 2730907, at *10 (quoting Mills, 244 F.3d at 5-7).  "[A]
claimant can only prevail on a challenge to such a decision if
he can show 'that the Appeals Council was 'egregiously mistaken'
in its decision to deny [the] Plaintiff's request for review'
after receiving the new evidence."  Arrington v. Colvin, 216 F.
Supp. 3d 217, 231 (D. Mass. 2016) (Dein, M.J.) (quoting Kirby v.
Astrue, No. C.A. 07-422A, 2008 WL 2787926, at *11 (D.R.I. July
17, 2008)), aff'd sub nom. Arrington v. Berryhill, No. 17-1047,
2018 WL 818044 (1st Cir. Feb. 5, 2018).  In this context,
egregious has been interpreted to mean "'[e]xtremely or

remarkably bad; flagrant.'" Ortiz Rosado v. Barnhart, 340 F.
Supp. 2d 63, 67 (D. Mass. 2004) (Neiman, M.J.) (quoting Black's
Law Dictionary (7th ed. 1999)) (alteration in original); see
also Scott B. v. Kijakazi, No. CV 21-481MSM, 2022 WL 17335993,
at *10 (D.R.I. Nov. 30, 2022), report and recommendation
adopted, No. 121CV00481MSMPAS, 2023 WL 1794576 (D.R.I. Feb. 7,
2023).  If the supplementary evidence is starkly inconsistent
with the hearing officer's determination, and undermines it, the
Council's denial of review constitutes an egregious mistake.
Orben, 208 F. Supp. 2d at 111.

   **B.  Discussion**

   Duran argues that the Council erred "when it failed
altogether to review new and material evidence[.]"  Mot. Reverse
3.  The Commissioner, in opposition, argues that the Council was
not required to consider the new evidence because Duran failed
to demonstrate good cause for why the evidence was not submitted
to the hearing officer previously.  Mot. Affirm 4.  The
Commissioner also argues that the Council's denial of review was
not error under the "'exceedingly narrow' standard of review,
under which the party challenging the [Council's] denial must
demonstrate an error that is 'egregious,' 'flagrant,' or
'extremely or remarkably bad.'"  Id. at 8 (quoting Lesieur v.
O'Malley, No. 23-1022, 2024 WL 513702, at *1 (1st Cir. Feb. 8,
2024)).

      **1.    The Council Did Not Rely On Duran's Lack Of Good Cause For Failing To Submit The Starr Report Earlier As Reason To Deny Review, And Therefore, The Commissioner Cannot Argue That Duran Waived Her Ability To Submit Rebuttal Evidence Due To That Requirement.**

The Commissioner argues that as Duran "gave no explanation as to why she had not provided rebuttal vocational evidence to the [hearing officer] who decided her claim," she has "missed her window of opportunity for submitting rebuttal vocational evidence."  Mot. Affirm 1-2.  The Council, however, as Duran correctly notes in her reply, "did not invoke a lack of good cause as a basis to deny" Duran's request for review.  Reply 1.  Although the notice Duran received with the Council's decision lists the "[r]ules [the Council] [a]pplied," and therefore states that a claimant must "show good cause for why [the claimant] missed informing [the Administration] about or submitting [the new rebuttal evidence] earlier," the notice does not name a lack of good cause for submitting the evidence sooner as a reason to deny review.  R. 1-2.  Instead, the notice simply states that the appeal Duran submitted, including the Starr report, "do[es] not provide a basis for changing the [hearing officer's] decision," and that therefore, the Council has "denied [Duran's] request for review."  Id. at 1.

"It is a bedrock principle that a court may only uphold an administrative action on a rationale advanced by the agency in

the administrative proceeding." Citizens Awareness Network,
Inc. v. United States, 391 F.3d 338, 349 (1st Cir. 2004) (citing
SEC v. Chenery Corp., 318 U.S. 80, 95 (1943)); see also Cano, ,
2020 WL 1877876, at *10 (collecting cases).  The Council did not
advance a lack of good cause as the reason it denied review of
the appeal.  R. 1.  Further, again, as Duran correctly notes,
per 20 C.F.R. § 404.976(b), the Council will only make evidence
part of the record if it meets the requirements for review, and
here, the Council made the Starr Report part of the record by
"exhibit[ing]" it on its order.  Id.  Finally, per 20 C.F.R. §
404.970(c), if the Council does not find good cause for evidence
submitted to it, the Council is to "send [] a notice that
explains why it did not accept the additional evidence[,]" which
the Council here did not do.  20 C.F.R. § 404.970(c); see Reply
2.  The record demonstrates that the Council did not advance a
lack of good cause as its reason for denying review; therefore,
the "Commissioner's argument . . . appears to be no more than a
post hoc rationalization of what occurred below." Palombo v.
Berryhill, No. 17-CV-284-LM, 2018 WL 3118286, at *5 n.6 (D.N.H.
June 25, 2018).

    As the Council did not invoke a lack of good cause on
Duran's part as its reason for denying review, Duran has not

"forfeited" her right to have the Council review the rebuttal evidence.[6] Mot. Affirm 2.

> **2.   The Evidence Within The Starr Report Undermines The Hearing Officer's Decision, And The Council's Failure To Consider It Is Egregious Error.**

As stated above, under these circumstances, this Court may only reverse and remand a Council decision if it determines that the Council was "'egregiously mistaken' in its decision to deny [the] Plaintiff's request for review after receiving the new evidence." Arrington, 216 F. Supp. 3d at 231 (quoting Kirby

---

[6] Even had Duran lost the right to have her rebuttal evidence reviewed under the Administration's regulations and procedures, as explained below, the Council's reliance on those regulations would be "egregious" error and require reversal. Agency regulations, codified in the Code of Federal Regulations ("CFR"), are promulgated by the executive departments and agencies of the federal government; they are not congressional statutes nor constitutional mandates.  CFR requirements, therefore, are simply agency interpretations of law, and therefore not owed any specific deference, Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244, 2261 (2024), and although the Social Security Administration is governed by the Social Security Act and not the Administrative Procedure Act, the Supreme Court has noted that it is likely "Congress wanted more oversight by the courts in this context rather than less." Smith v. Berryhill, 587 U.S. 471, 482 (2019); see also, e.g., Astrue v. Capato ex rel. B.N.C., 566 U.S. 541, 545 (2012) (applying Chevron deference to social security determination); Barnhart v. Walton, 535 U.S. 212, 215 (2002) (same).  Here, the regulations governing Council procedures are promulgated under the authority of 42 U.S.C.A. § 405, which has no requirement for "good cause" to be shown by a claimant for failure to submit rebuttal evidence prior to appeal to the Council.  In this instance, to deny review of Duran's appeal on such a basis, when the rebuttal evidence submitted not only undermines, but, perhaps, eviscerates the hearing officer's decision, is egregious error, and any reliance on agency regulations is therefore misplaced.

2008 WL 2787926, at *11 ).  As <u>Mills</u> explains, the Council "must review a case only if the [hearing officer's] decision is 'contrary to the weight of the evidence currently of record.'" 244 F.3d at 7 (citing 20 C.F.R. § 416.1470(b)).  The Council, therefore, would be "egregiously mistaken" were it to receive evidence that tends substantially to refute the hearing officer's decision and yet refuse to review the case.

Here, with the Starr Report added to the record, the Hearing Officer's decision is likely contrary to the weight of the evidence.  In making his decision to deny Duran benefits, the Hearing Officer relied heavily on Edghill's testimony regarding the jobs available to Duran in the national economy. <u>See</u> R. 33.  If that testimony is ably rebutted, the Hearing Officer's decision comes into question.  The Starr Report, which lays plain the deficiencies in Edghill's testimony, suggests that <u>none</u> of the jobs that Edghill stated were available to Duran in significant numbers would actually be plausible occupations for Duran moving forward.  <u>See</u> <u>id.</u> at 345-46.  "It was error for the Appeals Council to have rejected all of this evidence that . . . plainly shows far more than a reasonable probability that it would change the outcome of the decision." <u>Denise D.</u> v. <u>O'Malley</u>, No. CV 23-233-PAS, 2024 WL 3329473, at *11 (D.R.I. July 8, 2024).

According to the record, Edghill's testimony relied on data and information found in the DOT as well as her experience as a vocational expert, while the Starr Report relied on multiple other government sources for occupational data.  R. 32-33, 345-46.  The DOT has not been updated since 1991; within the DOT, the three occupations Edghill pointed to have not been reviewed or updated since 1977.  Courts in other circuits have recognized that the DOT is "an obsolete catalog of jobs."  Herrmann v. Colvin, 772 F.3d 1110, 1113 (7th Cir. 2014); see also, e.g., Alaura v. Colvin, 797 F.3d 503, 507 (7th Cir. 2015);  Cunningham v. Astrue, 360 F. App'x 606, 615 (6th Cir. 2010);  Stiens v. Kijakazi, No. 22-06125-NKL-SSA, 2023 WL 4824918, at *7 (W.D. Mo. July 27, 2023) (noting that multiple vocational experts described the DOT as "outdated");  Yanke v. Kijakazi, No. 20-CV-1055, 2021 WL 4441188, at *3-4 (E.D. Wis. Sept. 28, 2021); Gallegos v. Saul, No. CV 19-397 SCY, 2020 WL 5506113, at *9-10 (D.N.M. Sept. 11, 2020) (recognizing the outdated nature of the DOT);  Cockrell v. Commissioner of Soc. Sec., No. 2:18-CV-1124, 2020 WL 13542436, at *6 (S.D. Ohio Feb. 11, 2020) (noting that the "outdated nature of the DOT is well-established");  Hager v. Berryhill, No. 4:17 CV 2843 RWS, 2019 WL 1379877, at *9 (E.D. Mo. Mar. 27, 2019) (distinguishing vocational expert's testimony as valid because the expert relied on "bureau of Labor statistics rather than Census Bureau information" as would

normally be relied upon when referencing the DOT); Feeley v. Commissioner of Soc. Sec., No. CIV. 14-4970 KM, 2015 WL 3505512, at *10 (D.N.J. June 3, 2015) (characterizing vocational expert testimony based upon apparently outdated vocation referenced in the DOT as "dubious").

The DOT may still be a reliable source for information on certain occupations; for instance, occupation 185.117.014, "Area Supervisor, Retail Chain Store" is an ubiquitous occupation with a required skillset that likely has not changed dramatically since the date of the entry's last update in 1986. See 1 Dictionary of Occupational Titles 134. This Court does not rule outright that the DOT is unreliable in every case. In this instance, however, the vocational expert relied on the DOT for the three occupations noted for Duran, and Duran ably refuted that testimony with data suggesting that none of the three occupations were still available in significant numbers in the national economy. In other words, when reviewing the three relevant occupations, the DOT showed its age, all to the detriment of Duran.

For the Council to deny review of the Hearing Officer's decision in such a situation is egregious error. This is particularly true in the context of a social security disability claim, the adjudication of which is expected to be "inquisitorial rather than adversarial." Sims v. Apfel, 530

U.S. 103, 110-11 (2000).  As the Supreme Court has noted, the Social Security Administration is a massive enterprise, and mistakes can and will occur; Congress, therefore, intended the Social Security Act to be a "claimant-protective statute," and here, Duran deserves to be afforded that protection.  Smith v. Berryhill, 587 U.S. 471, 483 (2019).  The Social Security Administration itself has argued to the Supreme Court that a claimant's ability to "submit rebuttal evidence, including an opinion from a different vocational expert," is one of the procedures that ensures social security proceedings are "fundamentally fair."  Brief for Respondent at 43, 51, Biestek v. Berryhill, 587 U.S. 97 (2019) (No. 17-1184), 2018 WL 5013767, at *43.  This Court, therefore, grants Duran's motion to reverse or remand, ECF No. 12.

**V.    CONCLUSION**

Duran's motion to reverse or remand, ECF No. 12, is

**GRANTED.**   The Commissioner's decision is therefore reversed and

the matter remanded for further proceedings.   The Commissioner's

motion to affirm, ECF No. 22, is **DENIED.**


                                        /s/ William G. Young
                                         WILLIAM G. YOUNG
                                             JUDGE
                                             of the
                                         UNITED STATES[7]


---

[7] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.   Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 46 years.